Fretwell v. Laffoon.

———————————————

FRETWELL, *Plaintiff in Error*, v. LAFFOON.

1. **New Trial**: SURPRISE. "Surprise," as used in the statute in relation to new trials, (R. S. 1879, ? 3704,) denotes an unforeseen disappointment in some reasonable expectation against which ordinary prudence would not have afforded protection. If there is any element of negligence in the case there is no surprise.

2. ———: MISTAKE. Mistake growing out of forgetfulness or heedlessness is not such mistake as will authorize a new trial under this section of the statute.

3. ———: CASE ADJUDGED. The answer of a garnishee admitted that he had executed two notes in favor of Daniel Hibler, the defendant, both of which were secured by a recorded deed of trust, and one of which was paid. A year afterward judgment was rendered against him on this answer for the amount of the second note. In the meantime he had paid this note. Both notes were in point of fact payable to *Samuel* Hibler and not to *Daniel* Hibler. The garnishee moved for a new trial alleging these facts and also that he had not discovered the mistake in his answer till after the judgment. The motion was sustained by the trial court. *Held*, error.

4. **Garnishment**: ATTORNEY'S NEGLIGENCE. A garnishee is bound by his attorney's negligence the same as any other defendant.

5. **Garnishee's Liability on Notes.** If the answer of a garnishee admits the execution of a note in favor of the defendant, and does not show that the note is negotiable or has been assigned to some person named, the plaintiff will be entitled to judgment on the answer.

*Error to Cass Circuit Court.*—HON. NOAH M. GIVAN, Judge.

REVERSED.

This was a proceeding by garnishment against Laffoon, who was summoned as debtor of Daniel Hibler, the de-

fendant in the principal case. On the 19th day of July, 1878, Laffoon answered, and on the 23rd day of July, 1879, judgment was rendered against him upon his answer. On the following day a motion for new trial was filed, and subsequently sustained. The plaintiff excepted to this action of the court and refused further to prosecute his action, whereupon the court dismissed the same for want of prosecution, and the plaintiff sued out his writ of error.

*Allen Glenn* and *Railey & Burney* for plaintiff in error.

*Wooldridge & Daniel* for defendant in error.

### I.

SHERWOOD, J.—Did the circuit court err in granting the garnishee's motion for a new trial?

Our statute authorizes the verdict to be set aside, and. the granting of a new trial, " where there has been a mistake or surprise, of a party, his agent or attorney," etc. R. S. 1879, § 3704.

Surprise in the sense here used, is nearly allied to accident, which is a prominent subject for equitable relief. 3 Grah. & Wat. on New Tr., 874. Of accident Mr. Justice Story says: "By this term is intended not merely inevitable casualty or the act of Providence, or what is technically termed *vis major*, or irresistible force, but such unforeseen events, misfortunes, losses, acts or omissions, as are not the result of any negligence or misconduct in the party." 1 Story Eq. Jur., § 78. In the *People v. Superior Court*, 5 Wend. 114, where an application was made for a mandamus to vacate a rule granting a new trial, a peremptory writ was awarded on the ground that the trial court had improperly granted the new trial, basing its action on the ground of newly discovered evidence, the supreme court holding that the mover for a new trial was guilty of gross negligence in not discovering prior to the first trial, that the witness was a material witness, and that

moreover the testimony was merely cumulative. And it was there contended that though the lower court might have erred, yet that the granting of a new trial was a matter of discretion, not depending on any fixed or established rules of law, and, therefore, that the supreme court could not interfere; but that court held that there were certain principles applicable to new trials which were clearly settled and well defined by long continued practice, and an uninterrupted series of decisions of that and other courts, and after stating those principles, among which was, that a party is bound and presumed to know the leading points that were to be litigated in his case, remarked: " In cases to which these principles clearly and unquestionably apply, the granting or refusal of a new trial is not a matter of discretion. The parties have a legal right to a decision conformable to those principles. Where there is doubt upon the point of negligence, or as to the character of the evidence, or as to its materiality, it becomes a matter of discretion, and the court will not, perhaps I ought to say, cannot rightfully interfere. But no such doubts exist in this case. ·  *    *    We think it, therefore, a proper case for a mandamus. It is very possible that the purposes of justice might be subserved in this individual case by the granting of a new trial; but general principles, whose operation has been found salutary, and which have grown into authority under the sanction of repeated decisions, and almost immemorial usage, cannot yield to the hardship of particular cases. It is of cardinal importance that the rules and principles which regulate the proceedings and decisions of courts should be uniform and stable. The security of the citizen is essentially increased whenever the territory of undefined discretion in any of the departments of our government is circumscribed by the establishment of well defined and clear principles."

In *Peers v. Davis*, 29 Mo. 184, this court, per Ewing, J., approvingly citing 3 Grah. & Wat. on New Tr., 398, said: " Surprise, in its legal acceptation, denotes an un-

forseen disappointment in some reasonable expectation, against which ordinary prudence would not have afforded protection. Where the witness resided—whether forty miles from the place of holding court—was a fact of which the party could readily have informed himself by ordinary diligence ; and that it was not known is to be attributed to his own laches ; and surprise produced by the laches of a party is never a good cause for a new trial."

The text book just cited states that "if the surprise was owing to the least want of diligence, the applicant will be without sufficient excuse, and his motion will be denied. It is a condition precedent to his attaining relief, that he shall be wholly free from blame. To grant a new trial upon any other terms, would be holding out a premium to inefficiency and remissness, and would inevitably lead to great abuses. The cases universally support this wholesome doctrine."

Proceeding upon this theory of the law, this court in *O'Conner v. Duff*, 30 Mo. 595, held that the motion for a new trial was properly overruled, where the defendants alleged surprise by the testimony of their witness, but it did not appear they had sought any information from him before he was sworn, or made any effort to ascertain what his testimony would be. In another case in this court a similar ruling was made ; a defendant claimed that his codefendant had executed by mistake, one of the two notes sued on ; that he was never advised of the mistake ; could not discover it by any possible diligence, and never discovered it till after the trial had ended. And the co-defendant corroborated this by affidavit alleging that he was totally ignorant of his being sued on two notes till he was called on the witness stand. Commenting on these facts Wagner, J., observed : "Where a person receives notice of a trial, he is at once put on inquiry. The period of notice is always sufficiently ahead of the sitting of the court, to afford parties full opportunity to ascertain the precise situation of their cause and what testimony they

will require on their trial. And courts will not aid parties where they have failed to take the requisite steps to procure their evidence, and more especially where they have been guilty of unpardonable neglect. Before they ask the court to help them, they must have evidenced a disposition to help themselves." *Richardson v. Farmer*, 36 Mo. 35. The books abound with similar instances.

## II.

And in regard to mistake of a party as the ground for a new trial, it seems from the authorities, as well as from sound reason, that while negligence cannot be claimed as surprise, neither can incredible forgetfulness, unpardonable heedlessness or egregious blunder be classed as mistake; honest mistake which properly invokes judicial interposition. We search this record in vain for the elements of either surprise or mistake in their legal acceptation.

## III.

Laffoon was garnished, and answered on the 19th day of July, 1878, stating in substance, that on the 1st day of February, next preceding, he had executed two notes to *Daniel* Hibler, one for $500, due and paid in May of that year; the second note, for $600, being due May 1st, 1879, and unpaid, and that he could not say who the owner of the note was. On the 23rd day of July, 1879, judgment was rendered on the admissions of the answer alone of the garnishee. On the next day, July 24th, a motion was filed by the garnishee to set aside the judgment and grant a new trial as follows:

"Comes now Drury Laffoon, garnishee in the above entitled cause, and moves the court to set aside the judgment rendered against him in the above entitled cause and grant a new trial for the following reasons: 1st, Because the verdict and judgment are against the evidence, and the weight of the evidence. 2nd, That the verdict and

judgment are against the law and the evidence. 3rd, That upon the answer of said garnishee to interrogatories propounded to him, said plaintiff was not entitled to the judgment rendered against said garnishee, and said answer was not denied by said plaintiff. 4th, That in the answer of said garnishee filed herein on the 19th day of July, 1878, occurs a mistake in the name of the payee of the notes therein mentioned and attempted to be described; that said garnishee did not in fact execute two notes to said Daniel Hibler as therein stated, nor did he at any time execute any note whatever to said Daniel Hibler; that said garnishee on the 19th day of July, 1878, did execute and deliver to Samuel Hibler two promissory notes; one for $500, due the 1st day of March, 1878; the other for the sum of $600, payable on or before the 1st day of May, 1879; that the same were given for the purchase money of real estate, and both secured by deed of trust on real estate, dated the 19th day of February, 1878, and recorded at page 397, in book 22 in the office of the recorder of deeds in and for Cass county, but that said garnishee never at any time executed to said Daniel Hibler a promissory note or promissory notes as stated in said answer; that said answer was made under the impression and belief on the part of said garnishee that said promissory notes herein described (and in said answer attempted to be described), had been executed to said Daniel Hibler, that said answer is incorrect in stating the name of the payee in the notes, and was made under mistake as to the name of payee therein; that said notes were made payable to Samuel Hibler and not Daniel Hibler, and that both said notes are fully paid off and discharged, and that said garnishee did not discover said mistake in said answer until the 23rd day of July, 1879, and after the rendition of said judgment, wherefore he prays that the same may be set aside." This motion was duly verified.

It will be observed that when the garnishee filed his answer, he had already paid the first note, and presumably

had it in his possession.  If he did, he or his counsel was guilty of great negligence in drafting his answer, in stating that the notes were payable to *Daniel* Hibler, instead of *Samuel* Hibler.  And the same line of remark is applicable if the note was destroyed on payment, for still, in the same county the deed of trust, given to secure the notes, was recorded in March, 1878, and the dictates of ordinary prudence, would have suggested the examination of the deed in order to prepare the answer.  And in May, 1879, the second note was paid, over two months prior to the judgment rendered.  The garnishee, as we must presume, knew, or else he was guilty of laches which the courts will not aid, when he paid off the second note, to whom it was payable; to whom he paid it; to whom it had been transferred, and what he had alleged in his answer concerning it, both that it was unpaid, and that as to its ownership he could not say; and yet he pays off the note, takes it up, and still leaves his answer in the same shape it was, till judgment was rendered, and properly rendered on his own sworn admissions, when suddenly he discovers, on the very day the judgment was rendered, that he had made a mistake in his answer.  If a party showing such an entire lack of even the minimum of diligence, can successfully move to have the judgment against him set aside, it is difficult to conceive of a case where he could not be likewise successful.  It was the clear duty of Laffoon, so soon as he paid the second note, to have taken steps to have amended his answer, when the next term of the court was held, when he could have stated the fact of the payment of that note; to whom it had been assigned, and when the assignment occurred.

## IV.

A party who by mistake of his attorney pleads a plea which does not cover his defense, or correctly present his case, cannot, after judgment against him on his own admissions, set the verdict aside, and obtain leave to amend.

his plea. *McNeish v. Stewart*, 7 Cow. 474. And there are no more favors to be shown in this regard to a garnishee than to any one else. He stands upon the same footing, and must pay the same penalty for his negligence, inadvertence or forgetfulness as any other defendant whatsoever. Thus, where a garnishee answered denying indebtedness, and cause changed to another county, where the plaintiff filed a replication to the answer taking issues thereon, of which no notice was given the garnishee, and upon trial a verdict was found against him, the court refused to set it aside, holding it the duty of the garnishee to follow the case, and to take notice of what was done in it, the same as any other party. *Chase v. Foster*, 9 Iowa 429; Drake on Attach., § 658, and cases cited. So much for this branch of the case.

## V.

But the setting aside of the verdict and the granting of a new trial was erroneous for additional reasons: The answer of the garnishee was a sufficient admission of indebtedness to Daniel Hibler to authorize the judgment which was rendered. Nothing to the contrary appearing, we shall presume that the notes given by the garnishee were non-negotiable notes, and that the ownership of the notes remained as stated in the answer, and this in accord with a familiar principle. If the garnishee had been desirous of having determined whether the second note had been assigned to a third person, he should, availing himself of the provisions of section 2541, have disclosed in his answer and declared his belief that the note had been assigned to a third person, naming him, when proper steps could have been taken as provided by that section. But this he did not do, and his loose allusions to the ownership of the note did not comply with statutory requirements.

Therefore, judgment reversed and cause remanded with directions to proceed as herein indicated. HOUGH, C. J., and HENRY, J., concur; NORTON and RAY, JJ., dissent.