CONNALLY, Administrator, Estate of SHELTON, Appellant, v. PEHLE, Respondent.

St. Louis Court of Appeals, March 1, 1904.

1. NEW TRIAL: Grounds Stated in Order: Appellate Practice. The burden is on the respondent, in the appellate court, to show that a motion for new trial was properly sustained upon any ground other than that designated in the order of the trial court awarding it, from which the appeal was taken; and, in the absence of such showing, the appellate court will be confined to the consideration of the cause mentioned in the order. (Reyburn, J.)

Connally v. Pehle.

2. ————: **Surprise.** A new trial should not be awarded on the ground of surprise, where the surprise claimed is due to the least want of diligence; and upon the record in this case the order of the trial court granting it should be set aside. (Reyburn, J.)

**Majority Opinion.**

3. ————: **Newly Discovered Evidence.** The majority of the court are of the opinion that the newly discovered evidence, upon which the new trial was asked, showed the account upon which judgment was rendered had been paid by respondent, that he was not negligent, and that the trial court did not abuse its discretion in awarding the new trial which manifestly makes for justice. (**Per Curiam.**)

Appeal from Franklin Circuit Court—*Hon. W. A. Davidson,* Judge.

AFFIRMED.

*James Booth* for appellant.

(1)    A new trial should not be granted to a party upon that ground that he was mistaken as to the nature of his case or as to what his witnesses would swear. Robins v. Ins. Co., 12 Mo. 380. Surprise caused by the laches of party never afford ground for new trial. Tittman v. Thornton, 107 Mo. 500. (2) If there is any element of negligence, there can be no surprise. Fretwell v. Laffoon, 77 Mo. 26; Peers v. Davis, 29 Mo. 184. Parties can not claim to be surprised by the testimony of their own witnesses, when they have not sought to learn what such testimony would be. Oconnor v. Duff, 30 Mo. 395. (3) It must appear that the parties made proper effort to refresh the minds of their witnesses. Howell v. Howell, 37 Mo. 124. (4) If parties are surprised at evidence given on the trial, they must at once make such surprise known to the court and ask for a postponement of the trial, to enable them to procure additional evidence, if they desire to introduce further evidence on that branch of the case. Bragg v. Moberly,

17 Mo. App. 221; Albert v. Seiler, 31 Mo. App. 247; Winn v. Reed, 91 Mo. App. 621; James v. Mutual Association, 148 Mo. 1. (5) The sole question to be determined is whether or not the court ought to have sustained the motion on the grounds stated in the record. Milling Co. v. White Line, etc., 122 Mo. 258; Bradley v. Reppel, 133 Mo. 545; Hewit v. Steel, 118 Mo. 463; Bank v. Wood, 124 Mo. 72; Omearra v. Swanson, 62 Mo. App. 71; Candee v. Railroad, 130 Mo. 142. (6) Granting motion on one ground overrules all others. Ittner v. Hughes, 133 Mo. 679; Miller v. Madison Car Co., 130 Mo. 517; 140 Mo. 319.

*Oscar E. Meyersieck* for respondent.

(1) The statute authorizes verdicts to be set aside and new trial granted "where there has been a mistake or surprise of a party, his agent or attorney." Revised Statutes 1899, sec. 800. (2) Surprise means an "unforeseen disappointment in some reasonable expectation" against which ordinary prudence would not have afforded protection. Peers v. Davis, 29 Mo. 184. (3) The granting of new trials is discretionary with trial courts, and unless it clearly appears that this discretion is grossly abused, appellate courts will not interfere. Bank v. Armstrong, 92 Mo. 265; McCullough v. Ins. Co., 113 Mo. 606; McKay v. Underwood, 47 Mo. 187. And the burden of showing that the trial court abused its discretion is on the appellant. Ittner v. Hughes, 133 Mo. 679. (4) If the motion was correctly sustained on any ground assigned in the motion the judgment of the lower court should be affirmed. Rush v. Armstrong, 92 Mo. 265; Hewit v. Steele, 118 Mo. 463.

STATEMENT.

This, an action upon an account, was brought by plaintiff as administrator of W. L. Shelton against de-

fendant, before a justice of the peace at New Haven, Missouri, and appealed by appellant herein to the circuit court of Franklin county, where a trial by jury resulted in verdict for plaintiff for amount of claim, and from an order sustaining motion for new trial, the latter has appealed to this court. At the trial *de novo*, plaintiff established a prima facie case, and defendant testified in his own behalf, identifying a receipt given him by G. G. Frentrop consisting of a bill setting out the items of the account in suit, bearing date March 26, 1900, which was introduced. Defendant, continuing his testimony, stated he could not remember when he paid it except by date thereon. On cross-examination he deposed that he did not dispute the account, and would not say whether the date on the receipt was correct or not, and that he did not know whether he paid it before or after the death of Shelton. Frentrop testified to his management of the business of deceased and dealings with defendant: that the receipt tendered in evidence was a bill rendered by witness in his handwriting and showed receipt of payment, and upon cross-examination added he could not say positively whether the date upon the receipt was correct or not, but denied having stated to a witness, who so testified subsequently in rebuttal, that he, Frentrop, had said the date upon the receipt was incorrect, and that witness had dated it back: that he was talking to such rebutting witness about another bill, a bill for lumber; that defendant had paid the bill in suit to Shelton by check, and the latter had witness' receipt for it, and defendant would find such check if he made search, and that he did not know where the other bill was. As already alluded to, in rebuttal, a witness testified that he had asked Frentrop regarding the receipt and when defendant paid, and that he replied that defendant paid the bill after Shelton's death, and he dated the receipt back, but on the witness stand at trial before the justice, Frentrop swore

he did not know when he gave the receipt, but nothing was then said about two accounts or any payment by a check and this rebutting witness said he was speaking about the account in suit, the only one in which he was interested. Another witness for plaintiff, recalled in rebuttal, testified that he had overheard Frentrop say at New Haven, that he dated the receipt back, and there had been no question about another bill till the day of trial in the circuit court. The trial proceeded to a close and after verdict for plaintiff, defendant filed a motion for new trial containing the following ground:

"Because at the trial of said cause, the defendant himself and his counsel were surprised by the testimony of G. G. Frentrop to the effect that defendant had paid him after the death of said Shelton $14.85 in payment of lumber account for lumber he sold and delivered to defendant out of the lumber yard of said Shelton; that defendant and his counsel were also surprised by the testimony of said Frentrop to the effect that defendant paid to said Shelton, April 17, 1900, $14.83 by check in payment of the account sued on read in evidence and that said Shelton directed him as agent to give defendant receipt for account sued on; that as a matter of fact the testimony of said Frentrop given as aforesaid, is true, except that he called the draft hereto attached a check," and accompanied it by affidavits as follows:

"Now comes F. W. Pehle who first being duly sworn upon his oath says, that since the trial of the above named cause he has discovered that during the lifetime of W. L. Shelton, to-wit, between the fourteenth and seventeenth day of April, 1900, he paid the account here sued on by draft drawn by the Bank of Union on the Franklin Bank, St. Louis, payable to F. W. Pehle, Coll., for the sum of $14.83 which said draft said defendant indorsed and delivered to said Shelton or to his agent, G. G. Frentrop, on which draft said Shelton received and collected said sum of $14.83, on or

about the seventeenth day of April, 1900, in payment of the account sued on in this case.

"That said evidence has come to the knowledge of the defendant since the trial of this cause, and that it was not owing to a want of due diligence that said evidence did not come to his knowledge sooner.

"That said draft whereby said debt was paid has ever since the time of its issue and payment been in the possession of the Bank of Union, and without the knowledge of the defendant. That said draft is the same draft as the one attached to this motion and marked exhibit 'A', to the surprise of the said defendant. That the signature of the said F. W. Pehle, Coll., on the reverse side of said draft is the genuine signature of said defendant, and that the indorsement, 'W. L. Shelton, G. G. Frentrop,' is in the handwriting of G. G. Frentrop, agent of said Shelton.

"That the defendant did not know these facts at the time of the trial of this case and was greatly surprised at the testimony of G. G. Frentrop that there were two accounts, one of which, viz., the one here sued on, having been paid by a check during the lifetime of said Shelton, but that he has since discovered that there were in fact two accounts and that he in fact paid the account here sued on by the draft as above detailed. That the account above mentioned and not paid by draft, was for the sum of $13.90, which sum is so near the amount of the account sued on, and that said account was paid at so near the same time as this account that the defendant was misled thereby, and believed that there was but one account.

"Said F. W. Pehle further says that he was present at the trial of this case in the justice court and heard the testimony of G. G. Frentrop in that court, to the effect that the account sued on was paid to him in cash at or about the time of the taking of the inventory, and that he did not testify then that there were two accounts,

nor that this account was paid by check or draft, and so said defendant was surprised at the testimony of Frentrop as well as at the fact that there were in fact two accounts and that the account sued on was paid by the draft above mentioned. Said defendant further says that he believes the newly discovered evidence above mentioned will upon a new trial change the verdict of the jury.

"And this affiant further says that at and prior to the fourteenth day of April, 1900, he resided in the city of Union in said county and was engaged in his official duties as collector of said county, and during all said times bought seven or eight divers lots of lumber from said W. L. Shelton, from his lumber yard in New Haven, Missouri, which said lots of lumber were delivered by the agent of said Shelton to divers agents of this affiant, so that this affiant was not in a position at and before the trial of this cause to know all the facts touching the payment of said several accounts."

"This affiant, A. W. Hoffman, of lawful age, first being duly sworn on his oath says that he resides in the city of Union, in the county and State aforesaid; that he is the duly qualified and acting cashier in charge of the Bank of Union, a banking corporation, doing a general banking business in said city of Union in said county and State aforesaid; that the draft marked exhibit 'A' hereto attached and also to the motion for a new trial in the cause of M. T. Connally, administrator of the estate of W. L. Shelton, deceased, v. F. W. Pehle, was issued by said Bank of Union on the fourteenth day of April, 1900, drawn on the Franklin Bank at St. Louis for the sum of $14.83, payable to F. W. Pehle, collector, and that the indorsement thereon purporting to be the indorsement of said Pehle according to affiant's best knowledge and belief is the signature of said F. W. Pehle, and in the handwriting of said Pehle, and that said F. W. Pehle did considerable business with said

Bank of Union and that affiant is acquainted with his signature; that the stamps on the back of said draft indicate that said draft was paid and passed through the Bank of New Haven, at New Haven, Missouri, and through the St. Louis Clearing House at St. Louis, Missouri, on and before the 27th day of April, 1900, and next after the same had been paid to the indorsee of Pehle, to-wit, W. L. Shelton, and that said draft has been in the possession of said Bank of Union since shortly after said twenty-seventh day of April, 1900, until the fourteenth day of March, 1903.

"That this affiant is now and has for more than five years been cashier of said Bank of Union; that said draft was issued as aforesaid by said bank through him acting in said capacity and that this affiant, if called as a witness, will testify to the foregoing facts on a trial of said cause."

"This affiant, Jesse H. Schaper, of lawful age, first being duly sworn on his oath, states that he did not testify as a witness upon the trial of the case of M. T. Connally, administrator of the estate of W. L. Shelton, deceased, plaintiff, v. F. W. Pehle, defendant, in this court; that this affiant was the counsel for, and as such represented the said defendant in the trial of said cause before the justice of the peace in the city of New Haven, in Franklin county, Missouri, on the twenty-second day of November, 1902, which trial resulted in a verdict and judgment for the defendant and that at said trial before the justice, one G. G. Frentrop testified as a witness to facts material to the issues in said cause, in the presence and hearing of affiant to the effect that he, said G. G. Frentrop, was the agent of W. L. Shelton up to the time of latter's death and as such agent was in charge of the lumber business of said W. L. Shelton in New Haven, acting as salesman, keeping the book accounts thereof, and receiving and paying out moneys for said Shelton; and that among other matters testified to by said Fren-

trop, this affiant recollects that said Frentrop testified in substance that his (Frentrop's) best recollection was that F. W. Pehle paid him as agent of said Shelton $14.83 in payment of the account sued on the above case shortly before the date of the death of said W. L. Shelton; could not give the exact date but thought the date of the receipt given by him to said Pehle, read in evidence there was about the time of the payment of the account sued; or maybe a little later, and that such payment was so made by Pehle at New Haven; that in the testimony of said Frentrop before said justice upon said trial, said Frentrop made no mention of two accounts for lumber for about the same amount as being paid by said Pehle, that is to say, one next before and next after the death of said Shelton, nor did said Frentrop in said testimony testify at all about any draft or check in payment of said account sued on in this case; that this affiant was not of counsel for defendant in the trial of said cause in the circuit court of said county on March 11th, but that this affiant was present in said court and heard said Frentrop testify on direct examination in said cause to the effect that said defendant paid the account sued on in said case by check to Shelton in his lifetime and that Shelton directed him, Frentrop, to give receipt for payment of account sued on, which he did accordingly and that that was about the substance of said Frentrop's testimony upon that branch of the case on direct examination; that this affiant having been counsel for defendant in said case as aforesaid until a very short time before the trial of said case in this court, knows that reasonable diligence was exercised by him and by said Pehle during all the time whilst said cause was pending in court during his employment to bring in court any and all testimony material and competent in the defense of said suit; that this affiant having heard the testimony of said Frentrop at both said trials, was surprised and has reason to believe and does believe that

said defendant was surprised when said Frentrop testified in the circuit court at trial of this cause on March 11, 1903, to the effect that defendant paid the account sued on in this suit to him by check about the seventeenth day of April, 1900, and that he himself sold a lot of lumber to Pehle after the death of said Shelton for about $14.85 which amount said Pehle paid to him, Frentrop, in cash about the time of taking of the inventory of the estate of W. L. Shelton."

"This affiant, O. E. Meyersieck, being of lawful age and being duly sworn on his oath states that he was employed by the defendant F. W. Pehle, in the case of M. T. Connally, administrator of the estate of W. L. Shelton, deceased, plaintiff, v. F. W. Pehle, defendant, as counsel on about the — day of March, 1903, and as such counsel thereafter represented said Pehle in the defense of said suit and knows that he exercised all proper diligence to discover and bring into court all legal testimony in the defense of said suit and that he did not know of the draft marked exhibit 'A' attached to the motion for a new trial in said cause and that he was surprised at the testimony of G. G. Frentrop given by him at the trial of said cause in this court on March 11, 1903, to the effect that defendant paid the account sued on in this suit by check before death of W. L. Shelton and that there was another account for lumber for about same amount, sold by him, Frentrop, to said Pehle after death of Shelton, from latter's lumber yard, which last named account said Pehle paid to said Frentrop in cash in New Haven about the time of the taking of the inventory of the estate of W. L. Shelton; and this affiant further says that he has reason to believe and does believe that said defendant was surprised at the trial of said cause at said testimony of said Frentrop; and that after said trial this affiant, together with the assistance of said Pehle first discovered the existence of the draft marked exhibit 'A' attached to

motion for new trial and that this affiant verily believes that if a new trial of this case were granted the result will be different by reason of the discovery of said draft and the testimony of witnesses in respect thereof."

And also attached a check, thus:

"THE BANK OF UNION NO. 22530

"B of U          Union, Mo., Apr. 14, 1900.

"Pay to the order of F. W. Pehle, Coll........$ 14.83

Fourteen and 83-100................Dollars.

Duplicate unpaid.

"TO FRANKLIN BANK,

ST. LOUIS, MO.          A. W. HOFFMAN,

Cashier."

Said draft bears the following indorsements, to-wit:

"Pay to W. L. Shelton.          F. W. PEHLE, Coll.

"W. L. SHELTON.          G. G. FRENTROP.

"Pay Continental National Bank,

St. Louis, Mo.

Or order,

"Bank of New Haven,

"New Haven, Mo.

"G. S. BUCHANAN, Cashier.

"St. Louis Clearing House,

Apr.

2   27   1

2   1900

"Continental National Bank."

The court in sustaining the motion for new trial assigned as the ground of its action the paragraph above copied from such motion.

REYBURN, J. (after stating the facts as above). —1. After some wavering in the decisions thereon, the rule is now well settled, that where a motion for a new trial is sustained upon a ground specified, the burden devolves on respondent in the appellate court to show

that the motion was properly sustained upon any ground other than that designated in the order of the trial court awarding the new trial. In the language of a prior decision adopted in Emmons v. Quade, 75 S. W. l. c. 104; "If the trial court assumes to set aside a verdict for any reason not contained in the motion, it is still its duty to specify that reason upon the record; but whatever the grounds for its order, it was clearly the intention of the statute to give the right of appeal from its decision thereon, and if, in the opinion of the appellate court, its reasons are insufficient, the verdict must stand and the cost of another trial avoided, in the absence of affirmative showing by the party in whose favor the new trial was granted that it was properly set aside. on other grounds," and it follows that an order for a new trial based on one ground of the motion therefor, presumes the overruling of the other grounds. Hughes v. Ittner, 133 Mo. 679; Thiele v. Railway, 140 Mo. 319; Bradley v. Reppell, 133 Mo. 545. The burden being imposed on respondent to show some other ground enumerated in his motion for a new trial upon which the circuit court should have awarded him a new trial, in absence of such showing we are confined to consideration of the action of the lower court based solely on the cause mentioned in its order setting aside the verdict.

2. Section 800, R. S. 1899, sets forth the statutory causes for which a verdict may be set aside and new trial granted, reciting among others where there has been a mistake or surprise of a party, his agent or attorney. This statute was the subject of interpretation in Fretwell v. Laffoon, 77 Mo. 26, being then section 370, R. S. 1879, but which has remained on the statute book, undisturbed without amendment to this time, and appellant and respondent have united in appealing to above case. The facts therein are stated at length, and present questions of marked

similarity and almost identical with those involved in this record. As the true definition of the term "surprise," the eminent judge, expressing the opinion of the court, adopts the dictum of Justice STORY: "By this term is intended not merely inevitable casualty, or the act of Providence, or what is termed *vis major,* or irresistible force; but such unforeseen events, misfortunes, losses, acts, or omissions, as are not the result of any negligence or misconduct in the party." The language of that case, while characteristically forcible and vigorous, is as applicable to the facts presented by the case under consideration. "And in regard to mistake of a party as the ground for a new trial, it seems from the authorities, as well as from sound reason, that while negligence can not be claimed as surprise, neither can incredible forgetfulness, unpardonable heedlessness, or egregious blunder be classed as mistake, honest mistake which properly invokes judicial interposition."

Bearing in mind that the case had been originally heard before the magistrate in whose court it had been brought, and that the trial in the circuit court was the second trial of the cause, and occurring long after the first hearing, the setting aside of the verdict of the jury upon the ground assigned was improper and should not be upheld. Yielding full deserved credit to the affidavits, at best the defendant was convicted of carelessness and laches in not recalling the facts set forth in the affidavits in the lengthy interval elapsing between the two trials and taking advantage of them at the trial in the circuit court: any circumstances tending to evince surprise, stripped and analyzed, exhibit a state of facts establishing negligence, forgetfulness or carelessness to an extreme degree on part of defendant; all the proof referred to in the affidavits was within defendant's reach and could have been produced by the exercise of any diligence no facts tending to show which are sub-

mitted; and a new trial should never be awarded if the surprise was owing to the least want of diligence. Tittman v. Thornton, 107 Mo. 500; 3 Graham & Waterman, New Trials, 398. The surprise charged occurred during the progress of the trial, and no application was addressed to the court for a reasonable delay to enable defendant to produce additional evidence, if desired, and after verdict of the jury such appeal is made too late. In my opinion the new trial was erroneously granted, the order awarding it should be set aside and the cause remanded with directions to enter judgment for plaintiff on the verdict. As the majority of the court, however, are of the opinion that in passing upon a motion for a new trial, the trial judge being in much better position to determine than an appellate court, much must be conceded to the discretion of the trial court in its ruling in regard to the matter, and unless it clearly appears that such discretion was unwisely exercised, which is not apparent in this case, the appellate court should not interfere, the judgment is according affirmed. *Bland, P. J.,* and *Goode, J.,* concur.

PER CURIAM.—The majority of the court desire to add to what is said in the minority opinion, that in their judgment, the newly discovered evidence almost demonstrates that the respondent has paid the account he is sued on. The account is not a large one and in his memory the payment of it became confused with another payment he had made to Frentrop, Shelton's clerk or manager. When he heard Frentrop testify concerning the two payments and that the account in suit had been paid to Shelton personally in his lifetime, the respondent was at first surprised, but gradually the facts came to him; especially when it was found the draft on the bank verified Frentrop's statement. It is said the respondent was remiss in not recalling the truth sooner; but a man can not always control the operation

of his memory.   Persons often receive an inkling about some forgotten matter that at first seems strange to them, but sets to work a train of associations which ultimately bring into recollection all the details.   So it was with Pehle.   We think he was not negligent; at least does not so certainly appear to have been that we ought to disturb the order for a new trial, which manifestly makes for justice.