PHOENIX TRUST COMPANY, S. L. McMURRY and
LILLIE M. McMURRY v. ED. S. HOLT, MAY T.
GILL, FRED E. McMURRY, BERYL L. McMURRY
and PERRY BANCK; MAY T. GILL, Appellant.

In Banc, January 23, 1926.

1. **DEED OF TRUST**: Foreclosure: Negligence of Trustee: Negligence
of Mortgagee. Notwithstanding the trustee was negligent in fail-
ing to inform the mortgagee of the date of sale, and in consequence
the mortgagee was not present and the property sold for slightly
more than one-half the debt and one-half its value, the sale will
not be set aside at the suit of the mortgagee, where there was
no collusion or fraud on the part of the purchaser and trustee, and
the mortgagee being warned of the trustee's negligence failed to
properly protect himself and failed to be present, in person or
by agent, and the trustee acted in good faith and according to his
best judgment.

> *Held*, by WHITE, J. dissenting, with whom ATWOOD, J., concurs,
> that the sheriff, who was substituted trustee, chosen as such
> by the mortgagee, to whom alone he owed the duties of a
> trustee, since the mortgagors had abandoned all attempt to
> save the property, is shown by the evidence to be incompetent,
> indifferent to the rights of the mortgagee, disregardful of his
> instructions and of the duties he owed the mortgagee, and
> persistently negligent in failing to comply with requests for
> the date of sale, in consequence of all of which the mortgagee,
> whose place of business was in another State, was not present
> at the sale, although by telegram, sent on the day before the
> sale was made, the mortgagee had informed the trustee that a
> letter had been mailed, and in the letter was a request that the
> sheriff bid the amount of the debt, and the sheriff did not
> go to the post office for the letter until after the sale was made,
> and made no bid for the property, although to have gone to the
> post office was to have received the letter in ample time; and
> the judgment of the chancellor setting aside the sale on the
> ground of the sheriff's negligence should be affirmed.

2. ———: ———: **Inadequate Bid.** In the absence of collusion or
fraud on the part of the trustee and purchaser at the foreclosure
sale under a deed of trust, the sale cannot be set aside in a suit by

the mortgagee on the sole ground that the only bid made was only slightly more than one-half the value of the property sold.

3. ———: ———: **Negligence of Mortgagee.** The mortgagee, having had positive information that the trustee was negligent in the performance of his duties and disregardful of his repeated requests for the date of the sale, and having a safe way at a nominal cost to protect himself, cannot take chances and speculate on a line of action that leads to his financial disaster, and when the property has been sold by the trustee for something more than half the debt, have the sale set aside on the ground of the trustee's negligence and his disregard of the duties he owed as trustee to the mortgagee. [WHITE, RAGLAND and ATWOOD, JJ., dissenting.]

Equity, 21 C. J., Section 180, p. 194, n. 8. Mortgages, 41 C. J., Section 1490, p. 1027, n. 91; Section 1497, p. 1033, n. 88.

Appeal from Ralls Circuit Court.—*Hon. Charles T. Hays,* Judge.

REVERSED.

*E. L. Alford* for appellant.

(1) The finding of the court that at the time of the sale said lands were worth greatly in excess of the amount of the bid made by appellant, and that said lands were worth a great deal more than $7000, is error and unsupported by the evidence. If the amount of the bid was less than the actual value of the lands, such bid must have been so low as to shock the conscience. Robey v. Smith, 261 Mo. 192; Charles Green Real Estate Co. v. Building Co., 196 Mo. 358; Maloney v. Webb, 112 Mo. 575; Phillips v. Stewart, 59 Mo. 491; Hardwick v. Hamilton, 121 Mo. 465; Keith v. Browning, 139 Mo. 190; Harlin v. Nation, 126 Mo. 97; Markwell v. Markwell, 157 Mo. 326; Mercantile Co. v. Thurmond, 186 Mo. 410. (2) The court was in error in finding that the trustee negligently failed to notify respondent of the time of said sale. It is pleaded in plaintiffs' petition that Holt wrote Phoenix Trust Company on August 17th advising them of the date of the

sale and enclosing a copy of advertisement. It is admitted in the testimony, that this letter and advertisement was received on August 18, 1922. (3) The sale of lands by a trustee in a deed of trust will not be disturbed unless the trustee has failed to perform some duty which he should have performed, and where he has conducted the sale fairly. It is in the interest of the public and in accordance with public policy that such sales be sustained. Harlin v. Nation, 126 Mo. 97; Robey v. Smith, 261 Mo. 192; Mercantile Co. v. Thurmond, 186 Mo. 410; Maloney v. Webb, 112 Mo. 575; Phillips v. Stewart, 59 Mo. 491. (4) The evidence fails to support the court's finding: (a) That the land sold for an inadequate price; (b) that the trustee was negligent and failed to notify respondent of the date of sale; (c) that respondent was not negligent in protecting its interests. (5) Equity will not interfere by injunction for the protection of one who seeks relief, indirectly through the equities of other parties, on which equities such other parties themselves do not insist. 2 High on Injunction, p. 1526, sec. 1547.

*D. M. Stout* and *Drake Watson* for respondents.

(1) The finding of the trial court that at the time of the sale of the land the value thereof was greatly in excess of the bid of $7,000 is amply sustained by the evidence. This bid should be considered in connection with the following facts: (a) The sale occurred at an unusual hour; (b) the land would have sold better in parcels; (c) there was collusion between defendant Holt and defendant Gill; (d) the trustee was negligent in not notifying the Phoenix Trust Co. of the date of the sale and was guilty of irregularities, all of which are abundantly shown by the evidence and being shown equity avoids the sale. Hanson v. Neal, 215 Mo. 256; Montgomery v. Miller, 131 Mo. 595; Holsworth v. Shannon, 113 Mo. 508; Stoffel v. Schroeder, 62 Mo. 147; Daggett Hdwe. Co. v. Brownlee, 186 Mo. 621; Goode v. Comfort, 39 Mo. 313; Vail v. Jacobs, 62 Mo. 130; Baker v. Holligan, 75 Mo. 435; Tatum v. Holli-

day, 59 Mo. 422. (2) The trustee is agent of both mortgagor and mortgagee, and it is his duty to sell at a time and in manner to receive the greatest possible price for security, and it is his duty to personally know the land and exercise sound judgment as to sale. Chesley v. Chesley, 49 Mo. 540; Cassady v. Wallace, 102 Mo. 581; Goode v. Comfort, 39 Mo. 313; Hanson v. Neal, 215 Mo. 256; Judge v. Booge, 47 Mo. 544. (3) Fraud is seldom susceptible of positive proof, and the chancellor has the right and duty to consider the entire surroundings of the transactions and conduct of the parties and then make such reasonable inferences as the facts warrant. New England Loan & Trust Co. v. Brown, 177 Mo. 412; Ins. Co. v. Smith, 117 Mo. 292; Leavitt v. La Force, 71 Mo. 353; Polliham v. Reveley, 181 Mo. 622. (4) The defendant's plea of innocent purchaser is an affirmative defense, and the burden of proof is on him. Stephenson v. Kilpatrick, 166 Mo. 262; Holsworth v. Shannon, 113 Mo. 522. (5) Courts of equity will grant relief from accident. Cases last cited above. (6) The trustee, rather than sell at the late hour for an inadequate price, should have refused the bid and adjourned the sale over. Speer v. Home Bank, 200 Mo. App. 269; Daggett Hdwe. Co. v. Brownlee, 186 Mo. 621; Vail v. Jacobs, 62 Mo. 130; Graham v. King, 50 Mo. 22; Stoffel v. Schroeder, 62 Mo. 147; Judge v. Booge, 47 Mo. 544. (7) The finding of the trial court in an equity case is of persuasive force, and will not be disturbed on appeal unless he has manifestly disregarded the evidence. New England Loan & Trust Co. v. Browns, 177 Mo. 423; Jamison v. Bagot, 106 Mo. 240; Pike v. Martindale, 91 Mo. 268.

RAILEY, C.—On September 4, 1922, the above-named plaintiffs filed in the Circuit Court of Ralls County, Missouri, a petition for injunction against appellant, May T. Gill, et al., in which it is alleged, that the plaintiff Phoenix Trust Company was the owner of a deed of trust executed by plaintiffs S. L. McMurry and wife, conveying to E. W. Jewett, trustee, the southwest quarter of Section 8, and the west half of the northwest quarter of

Section 17, all in Township 53, Range 6 west, to secure the payment of a promissory note dated January 30, 1920, for the principal sum of $12,000, bearing interest at the rate of six per cent per annum, payable semiannually on the first days of March and September of each year respectively, according to the tenor of ten interest coupons of $360 each, of even date with the principal note of $12,-000, which was to become due on the first day of March, 1925. The petition averred default in the payment of the debt secured by said deed of trust, and the sale of said lands under the provisions thereof by Ed S. Holt, Sheriff of Ralls County, as substituted trustee. It charged fraud and collusion between said sheriff and defendant May T. Gill, by which the latter became the purchaser of said lands for $7,000, which was only a small part of their actual value. It is alleged that the sale of said land was unfairly conducted by Sheriff Holt, etc. An injunction was asked to restrain said Holt, as trustee, from executing a deed conveying said lands to defendant May T. Gill, etc. On September 7, 1922, the court made and entered of record an order granting a temporary injunction, restraining said Holt from delivering to defendant Gill a trustee's deed for said lands, and also restraining said Gill from taking possession of said lands until the further order of the court. Upon a final hearing of the case the court made the injunction against defendants perpetual, and defendant May T. Gill alone appealed to this court.

The evidence is undisputed, that S. L. McMurry and wife were the owners of the lands heretofore described, and that they executed and delivered to the Phoenix Trust Company the $12,000-note and interest coupons aforesaid, which were secured by a deed of trust on said lands. It appears from the evidence that E. W. Jewett, named as the trustee in said deed of trust, removed his residence from Missouri to California about the year 1921; that the interest coupons which became due September 1, 1921, and March 1, 1922, were past due and unpaid prior to July 10, 1922, although demand of payment had been made; that said Phoenix Trust Company was the owner

of said $12,000 note and the unpaid coupons aforesaid, when they became due by the terms of said deed of trust; that defendant Ed. S. Holt was appointed by said Phoenix Trust Company as trustee to succeed Jewett, the former trustee; that Ed. S. Holt, during the proceedings aforesaid, was the legally qualified and acting sheriff of Ralls County; that he accepted said trust on or about July 12, 1922. It appears from the evidence that Holt, as trustee, furnished the Center Herald, a newspaper published in Ralls County, a copy of the advertisement of the sale of said lands, which said copy was furnished him by the Phoenix Trust Company with blanks left therein to be filled; that the advertisement did not reach said newspaper in time for insertion therein where it was expected to appear, but was inserted in the following week's issue of said paper. The above necessitated the notice to commence in the issue of July 27, 1922, fixing the date of the trustee's sale for August 19, 1922, and under this notice, thus run, the land was sold. The evidence discloses that the Phoenix Trust Company is located at Ottumwa, Iowa; that the Trust Company directed Holt to furnish it with a copy of the sale advertisement as it appeared in the paper; that in compliance with this request Holt directed Mr. Hulse, the publisher of the above paper, to forward to said Trust Company at Ottumwa, Iowa, a copy of said advertisement; that he gave the publisher notice twice to send said advertisement to plaintiff, once when the advertisement was changed, and again when published. Mr. Hulse testified that he personally sent to the Trust Company on both of the above occasions the above advertisement. H. S. Merrick, president of the Phoenix Trust Company, testified that his company did not receive either copy of said advertisement; that the first notice which his company received, in reference to said sale, was on August 18, 1922, the day before the sale was to be made, when the Phoenix Trust Company at Ottumwa, Iowa, received a letter from Sheriff Holt, dated August 17, 1922, enclosing a copy of the advertisement, which showed that the lands were to be sold under the

foreclosure proceedings on August 19, 1922; that upon the receipt of the above letter, the Phoenix Trust Company, on August 18, 1922, sent to Sheriff Holt a telegram, dated August 18, 1922, as follows:

> Western Union Telegram.
>
> Received at 10:28 A. M.                          8 pd.
>
> Ottumwa, Ia.   9:32 A. M.
>
> Aug. 18, 1922.
>
> G. H. Holt, Sheriff.
>
> New London, Mo.
>
> Advertisement received my McMurry note and statement mailed today.
>
> PHOENIX TRUST CO.

Sheriff Holt testified that he received the above *telegram* on the night of August 18, 1922.

The letter from Sheriff Holt was dated at New London, Missouri, August 17, 1922. It was received by plaintiff on the morning of August 18, 1922, and the body of same, without signature, reads as follows:

> Gentlemen:
>
> In reply to yours of the 15 in Regard to your Land sale. Find enclosed notice of sale Published in the Center Herald of Center Ralls Co., Mo.
>
> The Editor Promised to send a copy but I suppose that he Forgot it and so did I.

The letter written by the Phoenix Trust Company to Holt on August 18, 1922, reads as follows:

> Dear Sir:
>
> We are this day in receipt of yours containing S. L. McMurry published advertisement and note that the sale is set for tomorrow.
>
> We regret that we have been unable to hear anything from you and did not feel inclined to mail the note until we knew the security had been advertised. Time is now very short, but we trust the note will reach you in time for sale. Please find herewith (then follows a statement of the amount claimed to be due aggregating $12,147.28).
>
> Unless our Examiner, Mr. Hughes, should happen to be on hand to attend the sale, please bid for us the amount of our claim and costs.
>
> Yours truly,
>
> HENRY HERVEY, Secretary.

This letter to Holt was sent by registered mail, and was received by Holt on August 21, 1922, the second day

after the sale. On August 21, 1922, Holt answered the above letter from Hervey, as follows:

> I received your registered letter relative to sale of land under deed of trust, this morning.
>
> I will say in reply that I waited on you until about four o'clock in the afternoon, and proceeded to sell the real estate to the highest bidder, and same was struck off to Judge M. T. Gill for the sum of $7,000.
>
> Yours truly, E. S. HOLT.

The Phoenix Trust Company did not send anyone to attend the sale. It made some effort to reach Mr. Hughes, who was in Missouri, but did not find him in time to have him attend the sale. The evidence shows that the usual time for sales of this character in said county was from 1:30 to 2:30 in the afternoon. It appears from the evidence that Sheriff Holt, the trustee, not finding anyone present or around the court house to represent the Phoenix Trust Company, delayed the sale for the purpose of giving said company an opportunity to have a representative on hand; that in response to inquiries made of him, as to when the sale would take place, Holt assured them that the sale would certainly take place, but that he was waiting awhile, thinking that possibly some one would appear to represent the Trust Company; that he waited until about four o'clock and, concluding that no other interested parties would appear, he had his auctioneer announce on the streets of New London that the sale would take place, and he then proceeded to sell the land at the court house door; that some twenty or thirty persons were present at the sale; that Judge May T. Gill made a bid on the land for $7,000 and the auctioneer, after crying for higher bids for a considerable time, sold the land to Judge Gill for the above amount, and took his check for $7,000 in payment of same. Holt advised Judge Gill that he did not have time to prepare a deed for him, but would do so at his earliest opportunity.

The trial court, in its finding of facts, held "that defendants Holt and Gill were not guilty of fraud or collusion." After carefully reading the record, we fully concur in exonerating defendants Holt and Gill from

any collusion, fraud or wrongdoing in regard to the sale of said land. The evidence, in regard to the value of the land, is very conflicting. At the time of this sale there appeared to be but little real estate selling. The land, according to the testimony of defendant's witnesses, was worth from $8,400 to $9,600, while, according to the testimony of plaintiff's witnesses, the land in controversy, at the time of the sale, was reasonably worth $14,400. Taking the evidence as a whole, we think the land would have been reasonably worth, if not put up at a forced sale, the sum of $12,000. On the other hand, if fully advertised, we doubt very much whether it would have brought $10,000 under a forced sale.

Judgment having been entered in favor of plaintiffs, the defendants May T. Gill and Ed. S. Holt filed in due time motions for a new trial and in arrest of judgment. Both motions were overruled, and defendant May T. Gill alone was granted an appeal to this court.

In order to avoid repetition, we have postponed the consideration of some of the issues involved, to be disposed of in the opinion.

I. The trial court, in its finding of facts, held that defendant May T. Gill was not guilty of either fraud or collusion in the purchase of said land. After reading the evidence, we fully concur in the views expressed by the lower court as to appellant's acts and conduct with respect to the sale of the land in question.

II. Appellant challenges the correctness of the court's finding of facts, which reads as follows:

"The court further finds that said Ed. S. Holt negligently failed and neglected to send to said plaintiff, **Negligence of Trustee.** Phoenix Trust Company, a copy of the advertisement and notice of sale when published as requested and negligently failed to notify said plaintiff, Phoenix Trust Company, of the time of said sale."

It appears from the record that on August 17, 1922, E. S. Holt wrote to plaintiff, and enclosed a copy of the advertisement, for the sale on August 19, 1922. This letter was received by plaintiff on the morning of August 18, 1922. The amended petition alleges:

"That all of said requests made of said Holt were unanswered by said Holt and wholly disregarded by said Holt except that on August 17, 1922, said Holt wrote plaintiff, Phoenix Trust Company, a letter informing plaintiff that said sale would be August 19, 1922, and inclosing copy of the advertisement or notice of sale."

It stands undisputed on the record that plaintiff had full notice on the morning of August 18, 1922, that the land would be sold on August 19, 1922, and likewise had notice at that time that Ed. S. Holt had been exceedingly negligent in failing to send plaintiff a copy of the advertisement prior to August 17, 1922. In fact, Holt admitted his prior negligence in his letter of August 17, 1922, to plaintiff, wherein he said: "The editor promised to send a copy but I suppose that he forgot it and so did I."

The trial court, in passing upon the facts, found that Ed. S. Holt was not guilty of either fraud or collusion. We think the evidence as a whole fully sustains this conclusion. It is true, that Holt had been negligent in failing to send a copy of the advertisement to plaintiff sooner but, on the day of the sale, not having heard from plaintiff as to what action it desired taken in reference to the sale, he postponed the same until about four o'clock with the view, and for the purpose, of giving plaintiff an opportunity to have a representative present at the sale or to notify him of its wishes in the premises. We accordingly find from the evidence, that plaintiff had timely notice of the sale before it occurred; that Holt was not advised by plaintiff before the sale, as to what steps it desired him to take with reference thereto, in case it had no one present to represent the plaintiff; that Holt, without fraud or collusion, used his best judgment in postponing the sale

to protect plaintiff, and throughout the whole transaction acted in good faith.

III.  Having found that neither May T. Gill nor Ed. S. Holt was guilty of fraud or collusion in respect to the sale of said land, would a court of equity be warranted in setting aside the sale, because the land may not have been sold for its full value? The amount of appellant's bid was $7,000. Taking the testimony of the witnesses with regard to the question of value, we think the land would have been reasonably worth, under ordinary circumstances, when not disposed of at a forced sale, the sum of $12,000, while it would ordinarily bring much less at a foreclosure sale. Conceding that the land in controversy was reasonably worth, under the circumstances heretofore mentioned, the sum of $12,000, the fact that it brought $7,000 at a forced sale, would not justify us in setting aside the sale for inadequacy of the purchase price. [Schwarz v. Kellogg, 243 S. W. 1. c. 184; Roby v. Smith, 261 Mo. 1. c. 201, 167 S. W. 965; Green Real Estate Co. v. Building Co., 196 Mo. 1. c. 372-3; Keith v. Browning, 139 Mo. 1. c. 196; Harlin v. Nation, 126 Mo. 97; Hardwicke v. Hamilton, 121 Mo. 1. c. 475; Maloney v. Webb, 112 Mo. 1. c. 584-5; Phillips v. Stewart, 59 Mo. 491.]

Tested by the foregoing authorities, we are bound to hold, that the alleged inadequacy of the purchase price in this case would not warrant a court of equity in setting aside the sale on that account.

IV.  Appellant challenges the correctness of the trial court's ruling to the effect, that plaintiff, through its employees, was guilty of no negligence, and exercised due diligence, after receiving timely notice of said sale, in protecting its rights thereunder.

There is practically no controversy over the facts relating to this matter. On August 14, 1922, the plaintiff, through its secretary, Henry Hervey, wrote a letter to sheriff Ed. S. Holt, in which it is said:

"More than a month ago, we mailed you deed of trust and have not received any communication from you.

"This matter is important and we trust we may hear from you with a copy of the published advertisement in order that papers may be in your possession by the date of sale."

The plaintiff in the above letter discloses that its employees had direct notice that Sheriff Holt was careless and negligent in looking after the matters entrusted to him. In Holt's letter to plaintiff, dated August 17, 1922, and which was received the following morning, he warned plaintiff of his carelessness, by concluding said letter as follows: "The editor promised to send a copy but I suppose he forgot it and so did I."

With conclusive proof in its possession that Holt was careless and could not be depended upon to exercise diligence in matters entrusted to him; with knowledge of the fact that the sale was to occur on the following day, the plaintiff sent to Sheriff Holt the following telegram on the morning of August 18, 1922: "Advertisement received my McMurry note and statement mailed today."

The plaintiff could have included in this telegram instructions to Holt to bid the amount of its debt at the sale. It could have advised Holt to postpone the sale, if necessary, until a representative of plaintiff could be present.

It appears from the evidence, that after plaintiff received Holt's letter of the 17th of August, 1922, on the following morning, the plaintiff had ample time to send one of its employees to New London to represent its interest at the sale, and failed to do so. It had sufficient time before the sale to have called up Sheriff Holt by telephone and informed him as to how plaintiff's interests should be protected at the sale. It had ample time to have wired Holt to enter a bid at the sale in behalf of plaintiff to the extent of its indebtedness. Instead of taking any of these precautions to protect its interests involving thousands of dollars, it saw fit to write Holt

a letter, the day before the sale, which was sent as registered mail, and which for the first time requested Holt to bid the amount of plaintiff's claim and costs. This letter was not received by Holt until August 21, 1922, the second day after the sale. Where a safe way is open to a party to protect himself from financial loss at a nominal expense, as shown in this case, can he take chances, and speculate unsuccessfully on a line of action that leads to financial disaster? If he does so, according to our conception of the law, he is in no position to call upon a court of equity to relieve him from his embarrassment.

The principle of law, as above announced, which applies in a case of this character, is ably considered by SHERWOOD, J., in Fretwell v. Laffon, 77 Mo. 26, and following; and by GOODE, J., of the St. Louis Court of Appeals, in Parker v. Britton, 133 Mo. App. 270, and following. To the same effect is our ruling in Mahany v. K. C. Rys. Co., 286 Mo. l. c. 614-15-16. See also 10 R. C. L. sec. 142, p. 395.

We accordingly hold that plaintiff, with full knowledge of the prospective sale, failed to exercise reasonable diligence and precaution, in protecting its interests, if it desired to bid upon said property at the sale.

V. Upon a full consideration of the evidence and respective briefs in this case, we have reached the conclusion, that plaintiff is not entitled to maintain this action, for the reasons heretofore stated. The judgment below is accordingly reversed and remanded with directions to the lower court to dismiss plaintiff's bill.

PER CURIAM:—The foregoing opinion of RAILEY, C., in Division Two, is adopted as the opinion of Court in Banc: Blair, C. J., Walker, Graves and Otto, JJ., concur; White, Ragland and Atwood, JJ., dissent, White, J., in a separate opinion in which Atwood, J., concurs.

WHITE, J. (dissenting).—I dissent from the conclusion reached in the opinion from Division Two, for a rea-

son not stressed either in the opinion or in the briefs or arguments of counsel, and that is, the gross breach by the sheriff of the duty which he owed to the plaintiff.

The plaintiff held a deed of trust for $12,000 on 240 acres of land in Ralls County. The trustee was unable to act, and the sheriff was appointed by the plaintiff to act as trustee in making the sale of the property after default in the payment of the debt. The sheriff, in speaking of the plaintiff, in his testimony said:

"It was not my part of it to take some action for them. I did not have authority to protect their interest. I do not know why they would be sending me a statement of the amount."

In thus disavowing any sense of obligation in the matter he showed his ignorance of the duty which the law imposes upon him as trustee, and ignored the special trust which the evidence shows the plaintiff placed in him.

The deed of trust provided that, in case of the inability of the trustee to act, the holder of the note, the plaintiff, might substitute the "acting sheriff of Ralls County, or any other person in his stead." It appointed the sheriff, when it might have appointed someone else, showing that it trusted the sheriff to look after its interest. It sent the appointment to the sheriff July 10, 1922, to file for record, and in the letter it enclosed an advertisement of the sale. The plaintiff might have selected the day of sale, but it trusted the sheriff to select the day. The letter used this language:

"*The note will be forwarded to you in time for the sale.*

"Will you favor us with a copy of the published advertisement?

"We trust you will give these matters prompt attention."

The sheriff apparently paid no attention to the request of that letter, and on July 29, 1922, just twenty days before the sale took place, and nineteen days after the first letter, the plaintiff wrote to the sheriff informing

him that it had not heard from him since it had sent him
the papers July 10th, and made this request:

"What is the sale day, and will you please furnish
us with a copy of the published advertisement?"

This letter likewise was ignored.

Why did the sheriff suppose that the plaintiff desired
to send him the note before the sale, and desired to know
the date of the sale? Why would they so anxiously insist
upon receiving such information before the day of sale?

On August 14th, the plaintiff, not having heard from
the sheriff, wrote again and asked what progress was
being made with advertising, and used this language:

"More than a month ago we mailed you a deed of
trust and have not received any communication from you.

"This matter is important and we trust we may hear
from you with a copy of the published advertisement *in
order that the papers may be in your possession by the*
date of the sale."

That letter was written on the 14th. Then on the
17th, for the first time, the sheriff acknowledged the let-
ter and sent a copy of the advertisement. That was two
days before the sale. The plaintiff received that letter
August 18th, and immediately wrote to the sheriff in-
structing him to bid the amount of the claim and costs.
The amount was over $13,000, including interest then due
and expenses. This letter was mailed at Ottumwa where
the company had its offices. At the same time the Com-
pany sent a telegram which the sheriff received August
18th, as follows:

"Advertisement received. McMurry note and state-
ment mailed today.     PHOENIX TRUST COMPANY."

The sheriff offered evidence to show that the pub-
lisher of the newspaper in which the sale was advertised
sent two copies of the paper to the plaintiff, one copy
containing the first advertisement, the second one con-
taining the advertisement with the date of the sale
changed. This later advertisement began July 27th, and
was published for four weeks. The sheriff testified that

when he received the plaintiff's letter dated August 14th, he learned for the first time that the Phoenix Trust Company had not received a copy of the advertisement. That could not be, because he had the letter written by the plaintiff July 29th, in which it reminded him that it had not heard from him, and requested that he send it a copy of the advertisement.

Now what was the situation August 19th, the day of the sale? Sheriff Holt knew that, excepting himself the plaintiff had no one present to bid on the land at the sale. He knew that the plaintiff expected him, before the sale, to have in his possession the note secured by the deed of trust, because it had twice written him to that effect. And it telegraphed him the day before, August 18th, that it was sending the note and statement by mail. He knew, therefore, that the letter was in the mail the day before, and due to arrive August 19th, the day of sale. He did not go to the post office to inquire for the letter until the Monday following, August 21st. When, upon inquiry, on the 19th, he found that no one except himself was present representing the plaintiff, he knew that in a few minutes he could call up the plaintiff by telephone and find out its wishes, or could telegraph for further information and receive it within a very short time, before it was necessary to make the sale, but he did neither of these things. He knew, also, that the plaintiff had every reason to believe that he would not sell the property without receiving further instruction from it.

What could he have supposed the telegram of August 18th was for, when it notified him that a statement was mailed to him that day? Did he think the company was just casually giving him information that was of no particular consequence in the matter?

The sheriff said in his testimony: "I had never received any information or suggestion of any kind from the Phoenix Trust Company, giving me directions as to how the land should be sold or what they wanted me to bid for them. *I did not know until after the sale they in-*

Phoenix Trust Co. v. Holt.

*tended to have someone here to bid.* I had no such information before the sale.''

In making this statement the sheriff divested himself of all his experience as an officer and a man of affairs, and retired from its proper functions his common sense. The effect of his statement is that he believed the plaintiff would start a proceeding to collect a debt, and thereafter pay no attention to the proceeding, and let the debt collect itself. Whether he knew anything about the value of the land or not, he knew that the plaintiff held it of sufficient value to secure the debt of $12,000, and accrued interest, or else it would not have made the loan. He knew, if he exercised his common sense, that it would endeavor to make the loan bring enough to pay the debt, and even if it did not want to buy the land it would take some steps to make it bring as much as possible. The common course of human activities told him that such would be the case. And yet, he says he had no information that the plaintiff wanted anybody to bid for it on the land.

Even with that professed ignorance of common affairs he ought to have manifested ordinary curiosity, and while he was fooling around until four o'clock before making the sale he ought to have telephoned or telegraphed the plaintiff to find out what it wanted in the premises.

According to the sheriff's own explanation of the way the mails operated, he did not expect an answer to his letter of August 17th, to reach him before the sale. Did he think he wrote too late to get an answer? When the plaintiff wrote to him on the 14th—the letter apparently mailed on the 15th—he said he didn't get it until the 17th. If it took two days for it to come he knew that it would take two days for his letter to go, and two days for the plaintiff's answer to come to him. He knew he could not write and get an answer in the two days remaining. Either that is the case or he received the letter on the 16th and should have answered it on that day. But whatever

his theory of the mails was, he knew by receiving a telegram, that a letter was in the mail.

The trial court in rendering judgment found there was no evidence of actual fraud between the sheriff and the bidder, but it found that the sheriff failed to send the plaintiff a copy of the advertisement, and that the Phoenix Trust Company had no representative at said sale, "but relied upon said Holt to do as aforesaid, and that said Holt failed to make any bid for the said company at the said sale; that said Phoenix Trust Company used due diligence in attempting to find out when the sale was to take place and was not guilty of negligence therein."

The opinion in Division Two holds that the Phoenix Trust Company was negligent in failing to have someone present to bid on the property. The evidence amply supported the finding of the trial court in that respect, that there was no such negligence. The only negligence of which it was guilty was negligence in trusting the sheriff. The company had every reason in the world to believe that he would not make the sale until he received the letter containing the note, or that he would not make the sale before communicating with plaintiff and explaining the situation. But the sheriff, without possession of the note, or the deed of trust, with nothing in his hands except perhaps the paper showing his appointment and the advertisement, without inquiring at the post office, or otherwise attempting to communicate with the plaintiff, made the sale. The finding of the chancellor is fully supported by a great preponderance of the evidence. The sheriff's entire excuse for his conduct is based on the statement quoted above—that he did not know that he had any authority to protect the interests of the plaintiff. He did no know his duty in the premises.

The law is well settled as to the duty of a trustee in such case. It was said in the case of Givens v. McCray, 196 Mo. l. c. 311: "It is fundamental that the trustee must in all cases in conducting sales of real estate, by reason of the powers conferred upon him by the deed of trust, discharge his duties impartially with the view of protect-

ing the interests of all parties who may be interested in such property."

And in the case of Goode v. Comfort, 39 Mo. l. c. 325, this court said: "Trustees are considered as the agents of both parties—debtor and creditor—and their action in performing the duties of their trust should be conducted with the strictest impartiality and integrity." [L. R. A. 1917B, l. c. 542-543.]

The sheriff owed no duty to any prospective purchaser. He seemed to forget that. His sole duty was to the mortgagor and the mortgagee, and in this case the mortgagor evidently had abandoned any attempt to save his property. The sheriff's duty to the mortgagee remained: to protect its interest. That is what he was appointed for, that is the duty his office, as trustee vested in him. According to his own statement, he did not recognize that obligation as binding upon him, and he acted all through as if he owed no duty to the plaintiff.

I think that the usual deference to the finding of the chancellor requires the judgment to be affirmed. *Atwood, J.,* concurs.